IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE SEARCH WARRANTS<br>04-236, 04-237, 04-238, | SW NO. 04-236, 04-237, 04-238<br>CIV-S-04-2396 FCD GGH<br><u>MEMORANDUM</u> |
| _____/ | |

*Introduction and Summary*

On June 1, 2005, the United States, represented by Camil Skipper, sought to have the court order immediate release of the documents seized pursuant to the above-captioned search warrants. The real parties in interest, Law Offices of Sekhon and Sekhon, represented by Thomas Bienert appeared. At the hearing the court ordered the Clerk to turn over possession of the seized documents on June 2, 2005. This Memorandum memorializes the reasons for granting the government's motion, and repeats the turnover instructions given by the court at hearing.

*Background*

The undersigned authorized seizure of documents and computers[1] from the Law Offices of Sekhon & Sekhon on September 7, 2004, and individuals associated with that Office (hereafter "Sekhon"). The court found that the government had provided probable cause to find

---

[1] For ease of reference, the court will use the word "documents" to refer to hard copy as well as electronic documents.

1

that Sekhon had engaged in a scheme to seek and file asylum applications based on false information. Specifically, Sekhon made contact with potential asylum applicants, who might otherwise have their asylum applications rejected, and convinced them to submit false affidavits and supporting information. In some cases, the government demonstrated that Sekhon directly provided the false supporting information. Sekhon also improperly lured applicants to file in a venue where Sekhon practiced, and in which the applicants would not generally be authorized to file. The applicants would set up fictitious addresses in Sacramento and elsewhere in California.

The government discovered the scheme based on a review of asylum applications that suspiciously utilized the same, or nearly the same boilerplate assertions of persecution. Also, an undercover informant was utilized to secure the facts of the scheme. The warrant affidavits supplied a lengthy list of actual applicants who had filed applications with the apparent, false information. It appeared to the undersigned that the Sekhon operation was permeated by fraud.[2] Sekhon does not dispute at this time that the warrant affidavit et al. facially supplied the requisite probable cause.

Because of the sensitive nature of a search of an attorney's office, the undersigned implemented special procedures for maintaining the documents in court custody while permitting the Sekhon attorneys to review the seized documents for valid privilege assertions, i.e., documents having nothing to do with asylum applicants engaging in the alleged fraud, or other privileged matters not connected to the alleged scheme. The undersigned was careful in limiting the scope of the documents to be seized to only those files whose applicants had been specifically identified, or to general information specifically connected with the alleged fraud. Special procedures were created for the review of electronic documents. The court was appropriately wary of having validly privileged documents subject to review by case agents. Misapprehending

---

[2] This is not to say that every asylum applicant assisted by Sekhon participated in asylum fraud. However, the government presented evidence that a great many did. The described scheme alleged multiple and ongoing fraudulent applications.

the scope of the court's procedures, Sekhon nevertheless sought to assert as privileged nearly all documents seized, including the files of those specifically identified applicants who had probably filed false applications.

Sekhon filed a motion pursuant to Fed. R. Crim. P. 41(e) for return of all property seized. Sekhon alleged that the search warrant was invalid because it was based on information obtained by government acquisition of information protected by the attorney-client privilege, including contact with represented parties, and by violations of the Due Process Clause. The undersigned recommended to the assigned district judge that the motion lacked merit, and that the court should decline to exercise its equitable jurisdiction to review pre-indictment motions for return of property on account of the lack of merit. (Findings and Recommendations of November 10, 2004.) On January 11, 2005, the Honorable Frank C. Damrell adopted the Findings and Recommendations in full.

Notwithstanding the fact that the Rule 41 motion was denied, and despite the court's previous findings in issuing the search warrants that probable cause existed to find that Sekhon was engaged in a crime, and that certain of the law office documents would supply evidence of that crime, Sekhon now asserts its reprise assertions in opposition to the government's present motion. That is, Sekhon asserts, seemingly for a second time, that the government has not supplied sufficient information for the court to engage in an in camera review of the seized documents, ostensibly for the purpose of determining whether the crime/fraud exception to the attorney-client privilege exists. Sekhon opposes any review of the now months old seized documentation, and by inference, repeats its desire that the documents be returned to it.

*Discussion*

Importantly, Sekhon does not assert individual assertions of privilege based upon claims that a particular document is not related to the alleged scheme, but rather, it claims an

\\\\\

3

omnibus privilege[3] for all seized (or nearly all seized) documents.  Sekhon confuses the present pre-indictment criminal proceedings involving a search warrant with tax summons and subpoena cases which permit a previously uninvolved court to conduct an in camera review for the purpose of establishing a prima facie case of crime/fraud such that otherwise apparently privileged documents lose their privilege.  Not only is Sekhon's claim novel in the search warrant context for procedural reasons, it omits the substantive fact that the undersigned has *already* found sufficient indica of crime/fraud in order that the search warrants issued in the first place.  This standard surpasses what is required to be found for establishing a prima facie case of crime-fraud exception to the attorney-client privilege.  See In re Grand Jury Proceedings, 87 F.3d 377, 381 (9th Cir. 1996) (only "reasonable cause to believe" attorney was engaging in fraud is necessary to find prima facie case of crime-fraud exception to attorney-client privilege).  Rather, at this point, the probability of fraud and criminal activity having been shown, it is up to the grand jury and the trial court to perform their functions, if and when the government seeks and secures an indictment.  Since the only documents at issue specifically relate to the found probable cause, nothing would be gained by a redundant in camera review.[4]

Rule 41 is quite specific concerning the procedure by which a search warrant can be attacked – either by a pre-indictment motion for return of property, Rule 41(e), or by a post-indictment motion to suppress, Rule 41(h).  There are no other "motions" that can be made. Sekhon cites to United States v. Zolin, 491 U.S. 554 (1989) and In re Grand Jury Investigation v.

---

[3] Sekhon asserts attorney-client and work product immunity.  Because the outcome of the government's motion does not depend on the nature of a particular privilege or immunity, the court will not discuss the privileges per se.

[4] Sekhon makes no individualized challenges to probable cause for a particular file or applicant.  Rather, Sekhon simply generally argues that the government has not made out a case for in camera review.  Once probable cause has been found for the seizure of the documents, Sekhon must do much more in the search warrant context than generally assert that the government has not made out a case for in camera review.  The undersigned does not rule out the possibility that in a particular case, an individualized privilege assertion might require in camera review.  See In re Grand Jury Subpoenas, 926 F.2d 847 (9th Cir. 1991).  However, this is not that case.

4

1  The Corporation, 974 F.2d 1068 (9th Cir. 1992) for the proposition that the court must review the
2  seized documents in camera, and then only if the government has demonstrated a sufficient prima
3  facie case for existence of the crime/ fraud exception to the attorney-client privilege and work
4  product immunity, may the already seized documents actually be turned over to the government
5  for review.  However, these tax summons and subpoena cases are entirely inapposite to the
6  present situation in that those cases involve situations where the court has not previously found
7  the prima facie existence of a crime or fraud, and the target for criminal process is the attorney
8  himself.  Cf. United States v. Friedman, 210 F.3d 227, 229-230 (4th Cir. 2000) ("[T]he fact
9  remains that the question whether a document is privileged has nothing at all to do with the
10 separate question whether there existed probable cause to justify the issuance of a warrant to
11 seize that document."  Although Sekhorn protests to the contrary, its position requires a finding
12 that some type of "probable cause plus" must exist before a law office's documents, seized
13 pursuant to a search warrant, are finally given to the government to be reviewed.  Yet the cases
14 are legion that an attorney's documents may be seized upon probable cause to believe they are
15 evidence of a crime just as any other documents may be seized.  United States v. Mittelman, 999
16 F.2d 440, 444-445 (9th Cir. 1993) (there is "no constitutional basis for requiring a showing
17 beyond probable cause in order to obtain a warrant to search a law office.")  The danger in an
18 attorney office search is that privileged documents *not related* to the alleged crime may be swept
19 up in an overbroad search.  Mittelman, supra.  However, in those cases in which the attorney's
20 operation is permeated by fraud, an omnibus search may take place to ferret out the offending
21 documents.  United States v. Oloyede, 982 F.2d 133, 139-140 (4th Cir. 1992).  In this case, even
22 though Sekhon's operations were clearly permeated by fraud, the undersigned still fashioned
23 procedures so that any non-crime/fraud connected documents would not be swept up and retained
24 by the investigating case agents.
25 \\\\\
26 \\\\\

The court has found that probable cause exist to believe that Sekhon has committed a crime, and that the very documents at issue are pertinent to that crime.[5] Sekhon does not challenge the veracity of the government's allegations in an evidentiary manner – Sekhon only generally, globally asserts a lack of sufficient information to overcome its omnibus privilege assertion and contests (again) the way the government obtained the information. Again, the court has found sufficient probable cause to warrant the seizing of the specific documents connected with the fraud. And, the court has previously found in connection with the Rule 41(e) motion, that the manner in which the government secured its information for the search warrant affidavits was not tainted such that a pre-indictment Rule 41 motion would require the return of the seized documentation. Sekhorn has been given its opportunity for pre-indictment review.

Even assuming for the moment that all of the Sekhon documents seized were attorney-client privileged (or work product), and even if the court were disposed to re-review the matter of the sufficiency of the government's showing of probable cause which equates with the prima facie case of crime-fraud exception to the attorney-client privilege, the outcome would not change. The court again finds from the warrant affidavit's sworn allegations that the government has established a prima facie, probable case of crime/fraud. The Sekhorn repeated arguments do nothing to persuade the court to change its mind. For the reasons previously expressed, the government clearly has shown that the Sekhon law firm's asylum applicant advocacy was permeated with fraud – it encouraged the mass filing of applications with false information. Everything from false addresses, to fictitious boilerplate "persecution" stories, to the creation of false documentary supporting evidence for the false stories, and the number of applications

---

[5] The government admits to the possibility that a few spurious hard copy documents not pertinent to the alleged crime may have been inadvertently seized, and the government will return such documents straight away. However, Sekhon's opposition does not concern inadvertently seized documents; it involves the vast majority of purposefully seized documents. Sekhon's omnibus privilege log which fails to specifically identify documents not connected in any way to the search warrant affidavit's allegations, has frustrated this court's attempts to preserve legitimate assertions of attorney-client privilege or work product immunity.

affected, demonstrate that Sekhon worked an extensive fraud on the administrative asylum tribunal. The court finds that the list of applicants supplied in the warrant affidavits were persons who, along with Sekhon, have likely engaged in a fraud and criminal activity. The court need not engage in a document by document review of each client. There is no legitimate privilege claim that can be made with respect to the documents related with specific clients who engaged in crime/fraud; nor can general templates of fraudulent persecution stories and the like be considered legitimate work product.

There exists yet another reason why the seized documents related to individual clients engaging in fraud cannot be found privileged. Neither the documents nor the information contained therein were intended to be confidential. The on-point case of <u>United States v. Oloyede</u> establishes the point. The <u>Oloyede</u> case also involved a massive false filing operation with the INS (now Homeland Security), although related to citizenship applications. The similarities of the Fourth Circuit case and the present one are striking. One of the defendants (Cooper) was a lawyer who had participated in the false filing. The <u>Oloyede</u> search warrant permitted a search and seizure of nearly all the documents in the Cooper law office. The Fourth Circuit found that the seizure was not overbroad because Cooper's practice was primarily limited to immigration matters and that his practice had been permeated with fraud – a fact probably established by the detailed search warrant affidavits. <u>Oloyede</u>, 982 F.2d at 138-140. However, of further note here, the Fourth Circuit determined that the false application materials in the client files were not privileged:

> Lastly, Cooper maintains that the search of his office unlawfully impinged on the attorney/client privilege between Cooper and his clients....Assuming Cooper has standing to claim the privilege for his clients, we determine under the specific facts of this case that the attorney/client privilege was waived. The information communicated by the clients to Cooper was specifically intended to be used to file their citizenship applications with the INS...Thus, there was no intention on the part of Cooper's clients that their communications be kept strictly confidential.

<u>Oloyede</u>, 982 F.2d at 141.

The same holds true for the Sekhon client files. The filed, or intended to be filed, persecution stories, false addresses and the like were intended to be submitted to the asylum authorities. As such, the information communicated to Sekhon was not privileged.

For all of the above reasons, at the conclusion of the hearing, the government was permitted access to the seized documents. As related at the hearing, should the government discover that it has Sekhon documents which were not germane to the documents permitted to be seized by the warrant, it shall return such documents forthwith. The computer discs which were seized, and for which the government made mirror images, shall be returned to Sekhon, if they have not been returned already. The government shall retain in electronic format only those documents which were permitted to be seized by the warrants. Sekhon shall cooperate in terms of authentication of the seized documents.[6]

*Conclusion*

The court's order made at hearing requiring the Clerk to turn over the seized documents to the custody of the United States Attorney is confirmed.

DATED: 6/7/05

/s/ Gregory G. Hollows

_____
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:gh:035
sekhorn.memo

---

[6] If Sekhon were unreasonably to contend that the electronic copies retained by the government were not true and correct copies, the court will revisit its order requiring the original electronic media to be returned.